## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-1835

JENNIFER SCHEFFLER, an individual,

PLAINTIFF,

v.

SCL HEALTH FOUNDATION., a Colorado nonprofit corporation; and,
KARL ZANDER, individually and in his official capacity as Administrative
Director of SCL HEALTH FOUNDATION.

DEFENDANT.

---

## VERIFIED COMPLAINT

---

Plaintiff DR. JENNIFER SCHEFFLER, by and through her undersigned counsel at the

law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits her Complaint against

Defendants SCL HEALTH FOUNDATION and KARL ZANDER, alleging as follows:

### INTRODUCTION

1.   This is an employment suit brought by a former employee of Defendants who was

wrongfully terminated and retaliated against during her employment in violation of state and

federal law. After uprooting her life from Texas to take a job with SCL Health in Colorado,

Plaintiff informed her supervisors that Defendants were illegally and unethically discriminating

against poor and homosexual patients, Defendants retaliated against Plaintiff, ultimately leading

to her wrongful termination.

1

2.   Plaintiff asserts claims for wrongful termination in violation of the Health Care Whistleblowers Protection Bill and the Colorado Whistleblower Protection Law. Plaintiff further asserts claims of discrimination and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000(e) *et seq.* ("Title VII") and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA"). Finally, Plaintiff asserts state law claims against Defendants for breach of contract, promissory estoppel, fraudulent inducement, negligent misrepresentation, and wrongful termination in violation of Colorado public policy.

## PARTIES

3.   Plaintiff JENNIFER SCHEFFLER ("Plaintiff" or "Dr. Scheffler"), is a citizen of Putnam County, New York who presently resides at 60 Hortontown Hill Rd., Hopewell Junction, NY 12533.

4.   Defendant SCL HEALTH FOUNDATION ("Defendant" or "SCL Health"), is a nonprofit Colorado corporation with a headquarters in Colorado at 500 Eldorado Blvd., Ste 4300, Broomfield, CO 80021 and a registered agent at 36 South 18th Avenue, Suite D, Brighton CO 80601.

5.   Defendant KARL ZANDER ("Defendant" or "Mr. Zander") is an individual and the Administrative Director for SCL HEALTH FOUNDATION and on information and belief resides in Mesa County, Colorado.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because the instant action arises under federal law, specifically Title VII.

7.   The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.   In addition, this Court has jurisdiction over the Defendants as the complained of unlawful employment practices took place in Colorado and the Defendants reside in and maintain substantial, ongoing business operations in this state.

9.   Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

10. At all relevant times, Plaintiff was an "employee", as set forth in 42 U.S.C. § 2000e(b) of Title VII and in Colo. Rev. Stat. § 24-34-401(2) of the CADA.

11. At all relevant times, SCL Health was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(f) of Title VII and in Colo. Rev. Stat. § 24-34-401(3) of the CADA.

**FACTUAL ALLEGATIONS**

12. In August of 2018, SCL Health contacted Dr. Scheffler, asking her to apply for an open position with St. Mary's Medical Center in Grand Junction, Colorado.

13. SCL Health operates St. Mary's Medical Center in Grand Junction, Colorado, which provides Bariatric services.

14. Dr. Scheffler received a Doctorate of Nursing Practice ("DNP") from Walden University Medical School and became a renowned medical provider after her residency under Dr. Garth Davis, a distinguished Bariatric surgeon.

15. After interviewing, Dr. Scheffler and SCL Health negotiated the specific terms of her employment, ultimately deciding that Dr. Scheffler would receive a fifty thousand-dollar ($50,000) marketing budget and two physician liaisons to market her.

16. During these negotiations, Defendants also specifically stated the hospital would advertise Dr. Scheffler's title as "Doctor". Dr. Scheffler addressed her title, "Doctor", on two separate occasions during these negotiations: once with Defendant's surgeon team and once with Karl Zander, Administrative Director of Rehabilitation and Bariatric Services. On both in-person occasions, Dr. Scheffler was informed her professional title of "Doctor" was not only acknowledged and approved but appreciated and SCL Health would proudly market her as such.

17. Also during these negotiations, SCL Health made representations that it and the Bariatric practice were financially stable.

18. Dr. Scheffler became aware that the foregoing financial representations were false only after accepting the position and moving to Mesa County when it was revealed to Dr. Scheffler by a co-worker that she had been brought in specifically to help the Bariatric practice recover financially. SCL's representatives either knew these statements were false or were ignorant to their falsity. However, the representations were clearly made to induce Dr. Scheffler to work for the company. Dr. Scheffler accepted the position, bought a home, left her employment in Texas, obtained Colorado licensing, and traveled to Colorado; all of which resulted in significant damages to my client and were directly related to SCL's representations regarding the position.

19. After accepting the terms of employment, Dr. Scheffler began the arduous process of moving to Colorado, including selling her house in Texas, leaving her community behind, purchasing a new home, and becoming licensed in Colorado.

20. In January of 2019, Dr. Scheffler officially began her employment with Defendant.

21. At the start of her employment, SCL Health advertised Dr. Scheffler on their website, referring to her as a "Doctor", and Defendant's employees referred to Dr. Scheffler with this title.

22. Early in her tenure with Defendant, Dr. Scheffler began noticing illegal and unethical practices by Defendant.

23. In January or February of 2019, Dr. Scheffler witnessed Defendant's employee, Marian Sinner, discriminate against a patient based on his sexual orientation. In this encounter, Ms. Sinner blocked a patient's access to make appointments upon learning he was homosexual.

24. Dr. Scheffler reported this discriminatory conduct to Karl Zander; however, upon Dr. Scheffler's reporting, Mr. Zander dismissively responded, "Dr. Scheffler, I am aware" and Defendants took no action to remediate Ms. Sinner's harmful conduct.

25. After this incident, Dr. Scheffler began noticing more discriminatory conduct by Defendant, specifically, Dr. Scheffler witnessed Karl Zander, representing SCL Health, purposefully denying indigent patients, or patients with lesser paying insurance benefits such as Medicaid, access to appointments and surgeries.

26. Dr. Scheffler's Medical Assistant, Jami Wright, was directed by Mr. Zander to lie to Medicaid patients and their referring doctors, telling them their patients were placed on waiting lists, while commercial insurance patients were not placed on such waiting lists.

27. Ms. Wright complained about lying to low-income patient to Mr. Zander, and his resolution was to create an email template to be sent only to Medicaid patients and their doctors, stating the clinic had become very busy and patients should expect delays in receiving care, when, in truth, the clinic did not have enough patients.

28. Dr. Scheffler had become aware of Mr. Zander's directives to lie to patients and attempted to intervene by informing her staff not to send any inaccurate communication to patients or their doctors, including misrepresentations that the clinic was too busy.

29. However, Dr. Scheffler's efforts proved to be inadequate, as Mr. Zander continued with the practice of discriminatorily lying to patients and doctors.

30. Eventually, Ms. Wright obtained a transfer out of the Bariatric Clinic because the emotional toll of lying to patients was too burdensome.

31. After Ms. Wright transferred out of the Bariatric Clinic, Ms. Sinner and Mary Lou Hampson began managing paper charts, and Dr. Scheffler started to notice that the charts of Medicaid patients, or patients that Ms. Sinner did not believe deserved medical care, were going missing.

32. The discriminatory conduct was pervasive throughout the entire clinic.

33. On several occasions, Ms. Maria Polen, an insurance secretary, came to Dr. Scheffler in tears over a conversation with Mr. Zander in which he scolded her for taking on too many Medicaid patients and told her she needed to "learn to care less".

34. Mr. Zander and Dr. Scheffler had many discussions regarding patient abandonment, neglect, and discrimination.

35. These discussions came to a head in April 2019, when Dr. Scheffler scheduled a potentially life-saving surgery for an indigent patient who had received bariatric surgery with this team in the past.

36. The patient had been calling in pain pleading to be seen for over a year when Dr. Scheffler became aware of her attempts to obtain care.  Many of her calls had gone unreturned until she was finally told she would not be scheduled with one of the doctors.  By this time, her condition had progressed to one that could have resulted in her death if left untreated further.

37. Dr. Scheffler scheduled the patient for corrective surgery.  Mr. Zander attempted to cancel this surgery and informed the Bariatric nurse he was not happy with Dr. Scheffler for giving out "free services." Noted bariatric patients are the responsibility of the bariatric team for life once their bariatric surgery is performed. Dr. Scheffler, refusing to cave to the Mr. Zander's pressure tactics, instructed the surgery scheduler with General Surgeons of Western Colorado to, under no circumstances, cancel the patient's surgery.

38. The patient ultimately received the needed care in May of 2019, and a few days later Dr. Scheffler began experiencing retaliatory treatment.

39. In May of 2019, just after Dr. Scheffler scheduled the life-saving surgery, a bariatric nurse informed Dr. Scheffler that SCL Health received an "anonymous complaint" that she was using the title of "Doctor" inappropriately.  To this day, Defendants have never presented these "complaints" to Dr. Scheffler.

40. Shortly after, Mr. Zander called Dr. Scheffler into a meeting with Brenda Anderson, HR Representative, and ordered Dr. Scheffler to disavow her title of "Doctor", contradicting the terms of her employment and failing to cite any company policy as justification.

41. Because neither Mr. Zander nor Ms. Anderson was able to produce any justification for their demands, Dr. Scheffler continued to use the title of "Doctor".

42. On May 31, 2019, Dr. Scheffler met with Judy White House, Vice President of Human Resources, and Mr. Zander, where once again Mr. Zander demanded Dr. Scheffler disavow her title of "Doctor".

43. In response to this demand, Dr. Scheffler pointed out no such laws, regulations, or by-laws existed at the time of her hire nor did SCL Health restrict the use of the title "Doctor" regarding any other non-physician PhD.

44. In response, Ms. White House turned to Dr. Scheffler and stated: "I am sorry this did not work out."

45. After their conversation, Dr. Scheffler was escorted to the elevator by Mr. Zander and Ms. Whitehouse, told not to interact with patients or staff, and ultimately left the hospital because she believed she had been terminated.

46. SCL made no such demands of any other SCL employees or contractors who used the title "Doctor" but were not medical doctors.  On information and belief, the great majority of these individuals were male including but not limited to Dr. Michael Olson (a Ph.D.), Dr. Randall Reitz (a Ph.D.).

47. SCL's website refers to Dr. Olson using his "Dr." title reading in pertinent part: "Dr. Mike Olson comes to us from the University of Texas [...]." https://www.sclhealth.org/find-a-doctor/o/olson-michael-m/

48. SCL's website refers to Dr. Reitz using his "Dr." title reading in pertinent part: "Dr. Randall Reitz is our Director of Behavioral Sciences.  [...]." https://www.sclhealth.org/find-a-doctor/r/reitz-randall-s/

49. Jessica Stephen Premo (Ph.D.), a female Ph.D. holder, but female, is referred to as "Ms." And not "Dr." on the SCL website.

50. When Mr. Zander and Ms. White House were speechless to her rebuttal, Dr. Scheffler once again refused to disavow her credentials.

51. On June 3, 2019, Dr. Scheffler received a voice mail from Mr. Zander requesting another meeting with himself and Ms. White House so that Dr. Scheffler could "accept the new terms of continued employment."

52. Dr. Scheffler immediately responded to clarify Mr. Zander's text, stating that she had thought she was terminated, but if that was not the case, she would be taking a few days of leave. By notifying Mr. Zander before patient care began that she would be out upheld her professional obligation to call in.

53. Mr. Zander did not respond to this message.

54. On June 4, 2019, Dr. Scheffler left a message for the Practice Manager, Rachel Cochran, explaining she was unsure what was happening but thought she was on leave because she had rejected a mandate redefining her professional stature. Dr. Scheffler was leased to General Surgeons of Western Colorado on Tuesdays. In attempting to speak with Cochran and leaving a VM prior to patient care, she again met her obligation to call in.

55. Later the same day, June 4, 2019, Dr. Scheffler received a text message from Mr. Zander stating that Dr. Scheffler needed to pick up her belongings. Mr. Zander did not acknowledge her termination nor resignation. Dr. Scheffler immediately responded stating she had not resigned but needed to know if she had been officially terminated.

56. Immediately after sending this text, Dr. Scheffler left Mr. Zander a voicemail stating that she had not resigned, and if SCL Health had terminated her, she needed to be notified immediately.

57. After no response, on June 6, 2019, Dr. Scheffler sent an email to Mr. Zander stating she would return to work and continue to provide patient care without disavowing her professional title.

58. Dr. Scheffler did precisely as she stated in her June 6, 2019 email and attempted to return to work but was denied access to the building.

59. Dr. Scheffler then received a text message from Ms. Blue stating the hospital staff was informed by Karl Zander on June 4, 2019, that Dr. Scheffler would no longer return to work, and thus was not allowed access to the building.

60. To this day, Dr. Scheffler has not received an official notice of termination.

61. SCL Health continues to demand Dr. Scheffler to repay her signing bonus, under the pretenses that Dr. Scheffler resigned before contractually allowed.

## FIRST CLAIM FOR RELIEF
*(Violations of the Health Care Worker Whistleblower Protection Bill)*

62. Plaintiff incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63. Defendant SCL Health is a health care provider within the definition of Colo Rev. Stat. § 8-2-123(1)(c) because Defendant is a licensed Health Clinic under Colo. Rev. Stat. § 25-3-101.

64. At all relevant times, Plaintiff is within the definition of a Health Care Worker under Colo Rev. Stat. § 8-2-123(1)(d) because Plaintiff was a licensed Doctor of Nursing Practice.

65. Plaintiff engaged in the protected activity of reporting Defendant's discriminatory conduct that risked patient safety and the quality of patient care at SCL Health.

66. Defendants retaliated against Plaintiff for making a good faith report of Defendants' unethical and illegal practices by reprimanding her, admonishing her, demanding she disavow her credentials, and ultimately, terminating her.

67. By retaliating against Plaintiff for making a good faith disclosure, Defendants have violated Colo Rev. Stat. § 8-2-123(2a).

68. As a direct and proximate result of Defendant's illegal activity, Plaintiff has been damaged in an amount to be proven at trial.

11

## SECOND CLAIM FOR RELIEF

*(Violations of the Colorado Whistleblower Protection Law)*

69. Plaintiff incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70. Defendant is a covered private enterprise under contract with a state agency per Colo. Rev. Stat. § 24-114-101(4) because Defendant is a legal entity that is a party to a type of state agreement to provide medical services to indigent community members.

71. Defendant Zander is a covered supervisor per Colo Rev. Stat. § 24-114-101(5) because Defendant is a person who supervises or is responsible for the work of one or more employees.

72. Plaintiff was an employee of SCL Health under Colo Rev. Stat. § 24-114-101(3) because she was employed by SCL Health, a private enterprise under contract with a state agency.

73. Plaintiff engaged in protected conduct under Colo Rev. Stat. § 24-114-102 by disclosing Defendants' discriminatory conduct that risked patient safety and the quality of patient care and acts and omissions of Defendants that are a danger to public health and safety.

74. Plaintiff made a good faith effort to provide her supervisors, including Defendant Zander, the information at issue.

75. The information disclosed is true and Plaintiff had at all times relevant hereto due regard for its truth.

76. Defendants illegally retaliated against Plaintiff for engaging in this protected activity by reprimanding her, admonishing her, demanding she disavows her credentials, and ultimately, terminating her.

77. As a direct and proximate result of Defendants' illegal activity, Plaintiff has been damaged in an amount to be proven at trial.

78. Plaintiff is entitled to bring a civil suit seeking damages and court costs under Colo Rev. Stat. § 24-114-103.

### THIRD CLAIM FOR RELIEF
*(Violations of Title VII of the Civil Rights Act of 1964 - Retaliation)*

79. Plaintiff incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80. Plaintiff participated in statutorily protected opposition to Title VII discrimination by reporting SCL Health's intentional and purposeful disparate treatment of patients based on their protected classes.

81. As a result of Plaintiff's protected opposition to and reporting of discrimination by Defendants against patients based on their protected classes, Defendants' retaliated against her by subjecting her to less favorable terms and conditions as described in this Complaint, including, but not limited to: reprimanding her, admonishing her, demanding she disavows her credentials, and ultimately, terminating her.

82. SCL Health's actions were taken against Plaintiff knowingly and intentionally with reckless regard of her rights.

83. A reasonable employee would have found Defendants' actions to be materially adverse.

84. There is a causal connection between the protected activity and the materially adverse action.

85. SCL Health's actions violated 42 U.S.C. § 2000e-3(a) and § 2000e-2(m) of Title VII.

86. As a direct, proximate, and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FOURTH CLAIM FOR RELIEF
*(Violations of Title VII of the Civil Rights Act of 1964 – Disparate Treatment Discrimination)*

87. Plaintiff incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88. Plaintiff is a woman and Defendants were well aware of that fact. Accordingly, Plaintiff is a member of a protected class and Defendants knew that she is a member of a protected class.

89. Plaintiff is entitled to and was promised by Defendants that Defendants would permit her to use her proper title, "Doctor," while carrying out her professional duties with SCL Health. Defendants encouraged Plaintiff to do so and used her title to advertise SCL Health's bariatric surgical practice. Plaintiff had achieved a doctoral level degree prior to her employment with SCL Health.

90. Other non-medical doctor employees and contractors with SCL Health also used the title "Doctor" in carrying out their professional duties.  SCL Health also advertises their practices using the title "Dr."

91. Defendants demanded that Plaintiff cease using the title Doctor without any basis in law, regulation or policy. This demand was made a new condition of employment in contradiction to the conditions of employment under which Plaintiff was hired.

92. Other similarly situated male non-medical doctor SCL Health employees and contractors were and are permitted to use the title "Doctor."

93. As a result of, in whole or in part, Plaintiff's sex, Defendants reprimanded her, admonished her, demanded she disavow her credentials, and ultimately, terminated her.

94. Defendants' actions were taken against Plaintiff knowingly and intentionally with reckless regard of her rights.

95. A reasonable employee would have found Defendants' actions to be materially adverse.

96. There is a causal connection between Plaintiff's sex and the materially adverse action.

97. Defendants' actions violated 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-2(m) of Title VII.

98. As a direct, proximate, and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## FIFTH CLAIM FOR RELIEF

*(Violations of the CADA – Discrimination for Opposition)*

99. Plaintiff incorporates by reference paragraphs 1 through 98 as if fully set forth herein.

100. Plaintiff participated in statutorily protected opposition to conduct made discriminatory by CADA and Title VII by reporting SCL Health's intentional and purposeful disparate treatment of patients based on their protected classes.

101. As a result of Plaintiff's protected opposition to discrimination, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint, including, but not limited to: reprimanding her, admonishing her, demanding she disavows her credentials, and ultimately, terminating her.

102. Defendant's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

103. A reasonable employee would have found Defendant's actions to be materially adverse.

104. There is a causal connection between the protected activity of complaining and the materially adverse action.

105. Defendant's conduct as described herein constituted a discriminatory or unfair employment practice in violation of Colo. Rev. Stat. § 24-34-402(1)(e)(IV).

106. As a direct, proximate, and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## SIXTH CLAIM FOR RELIEF
*(Violations of the CADA – Disparate Treatment Discrimination)*

107.    Plaintiff incorporates by reference paragraphs 1 through 106 as if fully set forth herein.

108.    Plaintiff is a woman and Defendants were well aware of that fact.  Accordingly, Plaintiff is a member of a protected class and Defendants knew that she is a member of a protected class.

109.    Plaintiff is entitled to and was promised by Defendants that Defendants would permit her to use her proper title, "Doctor," while carrying out her professional duties with SCL Health.  Defendants encouraged Plaintiff to do so and used her title to advertise SCL Health's bariatric surgical practice.  Plaintiff had achieved a doctoral level degree prior to her employment with SCL Health.

110.    Other non-medical doctor employees and contractors with SCL Health also used the title "Doctor" in carrying out their professional duties.  SCL Health also advertises their practices using the title "Dr."

111.    Defendants demanded that Plaintiff cease using the title Doctor without any basis in law, regulation or policy. This demand was made a new condition of employment in contradiction to the conditions of employment under which Plaintiff was hired.

112.    Other similarly situated male non-medical doctor SCL Health employees and contractors were and are permitted to use the title "Doctor."

113.    As a result of, in whole or in part, Plaintiff's sex, Defendants reprimanded her, admonished her, demanded she disavow her credentials, and ultimately, terminated her.

114.    Defendants' actions were taken against Plaintiff knowingly and intentionally with reckless regard of her rights.

115.    A reasonable employee would have found Defendants' actions to be materially adverse.

116.    There is a causal connection between Plaintiff's sex and the materially adverse action.

117.    Defendants' actions violated Colo. Rev. Stat. § 24-34-402(1)(e)(IV).

118.    As a direct, proximate, and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### SEVENTH CLAIM FOR RELIEF
*(Wrongful Termination in Violation of Public Policy)*

119.    Plaintiff incorporates by reference paragraphs 1 through 118 as if fully set forth herein.

120.    The Defendant's conduct prohibited the Plaintiff from exercising an important job-related right, in that Defendant retaliated against Plaintiff by terminating her employment after she raised concerns about the quality of patient care and discriminatory practices of SCL Health.

121.    After reporting her concerns, Plaintiff was subjected to less favorable terms and conditions of employment as described in this Complaint, including, but not limited to: reprimanding her, admonishing her, demanding she disavows her credentials, and ultimately, terminating her.

122.    Plaintiff's act of reporting Defendant's illegal and unethical practices was protected activity under the Health Care Worker Whistleblower Protection Bill, Colorado Whistleblower Protection Law, Title VII, and CADA.

123.    Defendant's actions clearly violated all of these laws, undermining an express public policy relating to Plaintiff's basic legal rights or privileges as a worker as well as the rights of Colorado citizens to equal protection of the laws pursuant to the United States Constitution and the Colorado Constitution.

124.    Dr. Scheffler was ultimately terminated as a result of refusing to abide by Defendant's prohibition.

125.    As a direct and foreseeable result of Defendant's intentional actions, Plaintiff has suffered damages in an amount to be proven at trial.

126.    As a direct and proximate result of such actions, Plaintiff has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

## EIGHTH CLAIM FOR RELIEF
*(Breach of Contract)*

127.    Plaintiff incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

128.    Defendant and Plaintiff entered into written and verbal employment contracts whereby SCL Health agreed to reimburse Dr. Scheffler for her relocation expenses, including her realtor fees and closing costs.

129.    Plaintiff subsequently performed her part of the contract and began the process of moving to Colorado to work for Defendant.

130.    In doing so, Plaintiff incurred relocation expenses of $25,000.

131.    Defendant failed to perform its duties under the contract by refusing to reimburse Dr. Scheffler for these costs based upon the agreed contractual terms.

132.    As a direct and proximate result of Defendant's failure to perform its contractual duties, Plaintiff has been damaged in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF
*(Promissory Estoppel)*

133.    Plaintiff incorporates by reference paragraphs 1 through 132 as if fully set forth herein.

134.    Defendant made oral and written promises to Plaintiff which it should reasonably have expected to induce action or forbearance by Plaintiff.

135.     These promises include receiving at least a fifty thousand-dollar ($50,000) budget for marketing, using at least two physician liaisons in her work, and being addressed and introduced as "Doctor".

136.     Dr. Scheffler reasonably relied on these promises by uprooting her life in Texas to move to Colorado, buying a home in the small mountain town of Grand Junction, and obtaining all the necessary licenses to practice in Colorado.

137.     Defendant refused to perform the promises made to Plaintiff and broke the agreements with Plaintiff, as alleged herein.

138.     Injustice can only be avoided by enforcing Defendant's promises to Plaintiff.

139.     As a direct and proximate result of Defendant's failure to keep these promises, Plaintiff has been damaged in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
*(Fraudulent Inducement)*

140.     Plaintiff incorporates by reference paragraphs 1 through 139 as if fully set forth herein.

141.     Defendant falsely stated that Dr. Scheffler would have a certain amount of budget and staff support, would be addressed as "Doctor", and would be working for a financially stable institution.

142.     These false statements were made in an attempt to induce Dr. Scheffler to move to Colorado and work for SCL Health.

143.     Defendant's false statements were a misrepresentation of material fact.

144.     Defendant had knowledge that these representations were in fact false.

145.     Plaintiff was completely ignorant that these representations were false.

146.     Plaintiff relied on these representations, taking action that resulted in significant damages.

147.     As a direct and proximate result of Defendant's false statements, Plaintiff has been injured in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF
### *(Negligent Misrepresentation)*

148.     Plaintiff incorporates by reference paragraphs 1 through 147 as if fully set forth herein.

149.     Defendant's statements further represent negligent misrepresentations, as recognized by Colorado law.

150.     Defendant negligently omitted the material fact that the hospital was in financial disarray and that there was, in fact, no potential for a marketing budget or liaisons, during the business transaction of securing employment from Dr. Scheffler.

151.     Furthermore, Defendant negligently misrepresented to Plaintiff that she would be addressed as "Doctor".

152.     SCL Health failed to exercise reasonable care or competence in communicating the terms and conditions of Dr. Scheffler's employment.

153.     Dr. Scheffler reasonably relied on the false information and has suffered damages.

154.    As a direct and proximate cause of Defendant's negligent misrepresentations,

Plaintiff has been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and

against Defendant, and Order the following relief:

a.   Front pay and benefits in lieu of reinstatement;

b.   Back pay, benefits, and other economic losses;

c.   Damages associated with all of Plaintiff's causes of action including but not limited to breach of contract, promissory estoppel, fraudulent inducement, negligent misrepresentation, wrongful termination, and all other claims made by Plaintiff;

d.   Compensatory damages, including but not limited to those for emotional distress;

e.   Liquidated damages on all claims allowed by law;

f.   Statutory penalties and fines on all claims allowed by law;

g.   Punitive and exemplary damages as allowed by law;

h.   Relevant statutory damages;

i.   Pre-judgment and post-judgment interest at the highest lawful rate;

j.   Attorney fees and costs of this action, including expert witness fees, as available by law; and,

k.   Any such further relief allowable by law or as justice requires.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on June 22, 2020.

BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at Law, P.C.*

*/s/ David H. Savidge*
David H. Savidge, Esq. #38658
Bryan E. Kuhn, Esq. #33642
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303)425-4013
david.savidge@beklegal.com
bryan.kuhn@beklegal.com
ATTORNEYS FOR PLAINTIFF