**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1835-WJM-STV

JENNIFER SCHEFFLER, an individual,

    Plaintiff,

v.

ST. MARY'S HOSPITAL AND MEDICAL CENTER, INC., a Colorado nonprofit corporation, and
KARL ZANDER, individually and in his official capacity as Administrative Director of St. Mary's Hospital and Medical Center, Inc.,

    Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

    This gender discrimination and retaliation dispute is before the Court on Defendants St. Mary's Hospital and Medical Center, Inc. ("St. Mary's") and Karl Zander's (jointly, "Defendants") Motion for Summary Judgment ("Motion").  (ECF No. 67.)  Plaintiff Jennifer Scheffler ("Plaintiff") filed a response to the Motion ("Response") (ECF No. 72), to which Defendants filed a reply ("Reply") (ECF No. 79).

    Plaintiff brings claims for gender discrimination and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").  (ECF No. 10.)  Additionally, Plaintiff brings numerous state law claims against St. Mary's and Zander.  For the following reasons, the Motion is granted as to the federal law claims, and the state law claims are dismissed without prejudice.

# I. BACKGROUND[1]

On January 2, 2019, Plaintiff began working as a Nurse Practitioner in the Bariatric Program at St. Mary's.  (ECF No. 72 at 3, ¶ 9.)  Plaintiff holds a Doctor of Nursing Practice degree and is licensed as a Nurse Practitioner in Colorado.  (ECF No. 67 at 4, ¶ 13–14.)  Plaintiff alleges that during the interview process Karl Zander, the Administrative Director of Rehabilitation and Bariatric Services for St. Mary's, promised her that she could use the title "Doctor" while working at St. Mary's.  (*Id.* at 3, ¶ 4; *Id.* at 4, ¶ 16.)

In January 2019, Plaintiff made a complaint to Zander and the Director of the Bariatric Program, Dr. Hanosh, about alleged discrimination against a patient due to his sexual orientation.  (*Id.* at 7, ¶ 33[2]; ECF No. 72 ¶¶ 135 & 141–142.)  The complaint was based on Plaintiff's allegation that Marian Sinner, the Secretary for the Bariatric Program, refused to schedule a patient for surgery because of the patient's sexual orientation.  (ECF No. 67 at 7, ¶¶ 32–33; ECF No. 72 at 7, ¶ 33.)

In February 2019, Plaintiff made an additional complaint to Zander about alleged discriminatory treatment of Medicaid patients based on there being a two-patient limit on the number of Medicaid patients who would be scheduled for surgery each month.  (ECF No. 67 at 8, ¶ 40.)

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  Unless noted otherwise, these facts are not disputed by the parties.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] In her Response, Plaintiff denies this fact, but her explanation shows that she does not actually deny this fact but merely wishes to add that her complaint was also motivated by discriminatory language used to describe the patient.  (ECF No. 72 at 7, ¶ 33.)

In May 2019, Zander informed Plaintiff that she could no longer refer to herself as "Doctor" at St. Mary's. (*Id.* at 11, ¶ 64.) In a subsequent meeting with Zander and Brenda Anderson, Manager of Human Resources, Plaintiff said it was unacceptable for her not to be permitted to use the title "Doctor." (*Id.* at 12, ¶ 66; *Id.* at 13, ¶ 69.) On May 31, 2019, Plaintiff met with Zander and Judith White House, Vice President of Human Resources. (*Id.* at 13, ¶ 72.) She was again informed that she was no longer permitted to use the title "Doctor." (*Id.*, ¶ 73.)

The parties do not agree about whether Plaintiff was fired or whether she resigned, but it is undisputed that May 31, 2019, was her last day working at St. Mary's. (*Id.* at 15, ¶¶ 81–82; ECF No. 72 at 14, ¶ 112.)

Plaintiff filed a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission (the "EEOC") on November 26, 2019. (ECF No. 67 at 16, ¶ 92.) In the Charge, Plaintiff alleged discrimination against patients at the Bariatric Clinic on the basis of sexual orientation and indigent status. (*Id.* at 17, ¶ 95.) Plaintiff also alleged that she was retaliated against because she complained about the alleged discrimination against patients. (*Id.* ¶ 94.) Nowhere in the Charge does Plaintiff allege discrimination against herself during her employment with St. Mary's. (*Id.* ¶ 96.) EEOC issued a Notice of Right to Sue on June 2, 2020. (*Id.* ¶ 97.)

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the

3

relevant substantive law, it is essential to the proper disposition of the claim. *Plaintiff v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

Plaintiff brings claims for gender discrimination and retaliation in violation of Title VII. In support of their Motion, Defendants argue that Plaintiff failed to timely exhaust her administrative remedies for her gender discrimination claim. (ECF No. 67 at 23–24.) Defendants also argue that Plaintiff's retaliation claim fails on the merits. (*Id.* at 21–23.) The Court addresses these arguments in turn below.

**A.   Title VII Gender Discrimination Claim Against St. Mary's Hospital**

"Under Title VII, it is 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Court views Plaintiff's claims through the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Turner v. Pub. Serv. Co. of*

4

*Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009).

Defendants argue that Plaintiff's gender discrimination claim fails because she did not exhaust her administrative remedies by including allegations of gender discrimination in her Charge of Discrimination filed with the EEOC.[3]  (ECF No. 67 at 23.) Plaintiff argues that she exhausted her administrative remedies by alleging gender discrimination in subsequent responsive documents.  (ECF No. 72 at 26.)

Normally, a plaintiff may not bring a Title VII action "based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."  *Lincoln*, 900 F.3d at 1181.  "That requirement, known as the exhaustion rule, derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (internal quotation marks omitted).  Thus, "[t]o advance these purposes a plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *Id.* (internal quotation marks, brackets, and ellipsis omitted).

The Tenth Circuit has "consistently held, time and again, that the reasonable and

---

[3] "The current state of the law in the Tenth Circuit is that 'a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.'"  *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1165–66 (10th Cir. 2018) (citing *Lincoln v. BNSF Rwy.*, 900 F.3d 1166, 1185–86 (10th Cir. 2018)).  As pertinent here, however, the Tenth Circuit has recognized that an affirmative defense can be raised by a motion for summary judgment.  *See Smith v. Spain*, 133 F.3d 933 (10th Cir. 1998) (affirmative defense of qualified immunity may be raised by a motion for summary judgment); *see also Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443 (10th Cir. 1992) (affirmative defense of immunity properly raised for the first time in motion for partial summary judgment).

5

likely scope of the investigation is determined by the allegations contained in the Charge itself, rather than in the Charge and any responsive documents." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1165 (10th Cir. 2018) (emphasis in original); *see Sanderson* 976 F.3d at 1170 (holding that plaintiff failed administratively exhaust her retaliation claim where plaintiff alleged retaliation in her responsive documents but not in her initial charge).

The parties agree that the Charge did not expressly allege sex discrimination. (ECF No. 67 at 12, ¶ 93; ECF No. 72 at 12, ¶ 93.) Importantly, the Charge does not allege that any member of the opposite gender was treated more favorably than Plaintiff. (ECF No. 67-20.) Considering these undisputed facts, the Court finds that Plaintiff failed to administratively exhaust her gender discrimination claim. *See Alabi v. Vilsack*, 860 F. App'x 576, 580 (10th Cir. 2021) (holding that plaintiff failed to exhaust administrative remedies on claim of racial discrimination under Title VII where his EEOC charge failed to allege that members of another racial group were treated more favorably).

For the foregoing reasons, Defendants' Motion is granted as to Plaintiff's claim of gender discrimination under Title VII.

**B.      Title VII Retaliation Claim Against St. Mary's Hospital**

Plaintiff alleges that she was retaliated against in violation of Title VII. (ECF No. 1 at 15–16.) In order to make out a *prima facie* case of retaliation, a plaintiff must present evidence that: (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection exists between the protected activity and the materially adverse action. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

6

Defendants argue that Plaintiff's claim fails because she has not engaged in protected opposition to discrimination. (ECF No. 67 at 21.) For a complaint to an employer to constitute protected activity, the complaint must involve the assertion of some right protected by Title VII. *See Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1411 (11th Cir. 2010) (a retaliation claim "requires that the protected activity involve the assertion of rights encompassed by the statute"). The Tenth Circuit has held that a Title VII retaliation claim may not survive if the claim is based on an unreasonable belief that the "underlying conduct violated Title VII." *Crumpacker v. Kan. Dep't of Human Res.*, 338 F. 3d 1163, 1171 (10th Cir. 2003).

Plaintiff's retaliation claim is based on several complaints she made about alleged discrimination against patients at St. Mary's. In January 2019, Plaintiff raised a complaint about alleged discrimination against a patient of the Bariatric Clinic due to his sexual orientation. (ECF No. 67 at 7, ¶ 33.) "Plaintiff also raised a complaint about how the Bariatric Program treated Medicaid patients in February or March 2019 based on their [*sic*] being placed a two patient limit on the number of Medicaid patients who would be scheduled for surgery in a month." (*Id.* ¶ 40.) Plaintiff notably does not point to a single case to support her assertion that her complaints in either context were protected activity under Title VII. (*See generally* ECF No. 72.)

First, the Court finds that Plaintiff's complaints regarding St. Mary's allegedly discriminatory treatment of patients based on their economic status were not protected activity under Title VII. Title VII protects against discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII does not protect against discrimination based on socio-economic status. Therefore, Plaintiff did not have

7

a reasonable belief that the conduct she opposed violated Title VII.

Next, the Court considers whether Plaintiff's complaint regarding allegedly discriminatory treatment of a patient on the basis of his sexual orientation was protected activity under Title VII.  Plaintiff alleges that her co-worker, Ms. Sinner, who was employed as a secretary, refused to schedule an individual for surgery because he was a homosexual.  (ECF No. 72 at 16, ¶ 130.)  She "reported her concerns of patient discrimination on the basis of sexual orientation to Karl Zander, Dr. Hanosh, and Carla Blue."  (*Id.* at 17, ¶ 141.)  Plaintiff argues that she was engaged in protected activity when she made this complaint.  (*Id.* at 24.)  The Court disagrees.

Title VII was not created to eradicate all discrimination by private individuals but to eradicate discrimination by employers against employees.  Thus, "Title VII's anti-retaliation provision (the opposition clause) bars an employer from discriminating against an individual who has 'opposed any practice made an *unlawful employment practice*' by the statute."  *Reznik v. inContact, Inc.*, 18 F.4th 1257 (10th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis added).

The specific issue here is whether a complaint of retaliation for opposing discrimination by co-employees against *non-employees* is cognizable under Title VII. The Tenth Circuit has not addressed this issue, but several other circuits have considered the question in similar circumstances.

In *Crowley v. Prince George's County, Maryland*, Crowley alleged that he had been retaliated against for his involvement in an investigation of racial harassment claims against the police department.  890 F.2d 683, 687 (4th Cir. 1989).  The Fourth Circuit found his retaliation claim was not cognizable under Title VII because he had not

8

claimed to have "been retaliated against for investigating discriminatory employment practices within the police department, but for investigating instances of racial harassment perpetrated by police officers against members of the community." *Id.* The court reasoned persuasively as follows:

> It may be that the downgrading of Crowley's position by the chief of police was wrongful or even spiteful. We have emphasized, however, that Title VII "is not a general 'bad acts' statute." *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Rather, the conduct it prohibits is specifically set forth. To recognize Crowley's claim would be to authorize retaliation actions under Title VII for anyone whose job entails the investigation of any claim of discrimination against his or her employer, without regard to whether the claimed discrimination relates to a practice of employment. While Congress may decide to extend the statute's coverage to persons who bring any discriminatory practice of an employer to light, such a step lies beyond the province of the courts. To find in Title VII protection for whistle-blowers on each and every instance of discrimination on the part of an employer is more than we think the plain language of its provisions will support.

*Id.* In a similar case, the Second Circuit came to the same conclusion. *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (holding that plaintiff's retaliation claim was not cognizable when plaintiff opposed co-workers' racially discriminatory treatment of the public because his opposition was "not directed at an unlawful employment practice of his employer"); *see also Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978) ("By the terms of the statute . . . not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."); and *Little v. United Tech.*, 103 F.3d 956, 959 (11th Cir. 1997) (holding that plaintiff's opposition to co-workers "racially derogatory comment did not constitute opposition to an unlawful employment practice as a matter of law").

9

The Court finds that Plaintiff's complaint to her supervisors about her co-worker Ms. Sinner's discriminatory treatment of a non-employee patient is not protected activity under Title VII. *See Silver*, 586 F.2d at 142 ("A single unauthorized act of discrimination by a co-worker has never been held to justify 'opposition' in the sense of protecting a protesting employee from employer discipline"). The Court also finds that Plaintiff did not have an objectively reasonable belief that she was opposing an unlawful employment practice. *See Bonn v. City of Omaha*, 623 F.3d 587, 592 (8th Cir. 2010) (holding that plaintiff did not engage in protected activity where she authored a report related to "potentially discriminatory policing tactics, and it was not reasonable for her to conclude that these policing tactics were employment practices that violated Title VII").

For the foregoing reasons, Defendants' Motion is granted as to Plaintiff's claim of retaliation under Title VII.

## IV. PLAINTIFF'S REMAINING STATE LAW CLAIMS

Though the issue has not been raised by either party, the Court has an independent duty to examine its jurisdiction at every stage of the litigation. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because the Court had original jurisdiction over Plaintiff's Title VII claims, it had supplemental jurisdiction over the remaining state law claims as well. 28 U.S.C. § 1367.

This case is now in a fundamentally altered procedural posture given that the Court is herein granting summary judgment to Defendants on all of Plaintiff's federal law claims. Plaintiff's remaining claims are all grounded in state law. A federal court does not have independent jurisdiction over state law claims unless those state law claims "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v.*

*Darue*, 545 U.S. 308, 312 (2005). None of the state law claims at issue in this case turn on questions of federal law.

Federal supplemental subject matter jurisdiction over state law claims "is extended at the discretion of the court and is not a plaintiff's right." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350. In the interest of comity and federalism, district courts are advised against making "needless decisions of state law." *TV Commc'ns Network, Inc.*, 964 F.2d at 1028. If federal claims are dismissed before trial, leaving only issues of state law, the federal district court should ordinarily decline to exercise supplemental jurisdiction by dismissing the case without prejudice. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (citing *Carnegie-Mellon Univ.*, 484 U.S. at 350).

The instant suit is not yet at the trial stage, so issues of judicial economy and fairness are not implicated here. *See Carnegie-Mellon Univ.*, 484 U.S. at 350. Rather, the issues of comity and federalism are at the forefront because the Court would have to decide matters of state law if it continued to exercise jurisdiction over Plaintiff's remaining claims. *See McWilliams v. Jefferson Cnty.*, 463 F.3d 1113, 1117 (10th Cir. 2006). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902

11

F.2d 1472, 1478 (10th Cir. 1990). The remaining causes of action either arise out of Colorado statutes, or are grounded in Colorado common law; no federal laws are implicated by these claims. Thus, there is not a compelling reason to maintain jurisdiction over this suit.

The Court finds that the remaining claims would be better addressed in state court. *See Gaenzle*, 614 F.3d at 1229; *TV Commc'ns Network, Inc.*, 964 F.2d at 1028; *Thatcher Enters.*, 902 F.2d at 1478. Accordingly, the Court declines to continue to exercise its supplemental jurisdiction over the remaining claims.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 67) is GRANTED IN PART;
   a. Defendants' Motion for Summary Judgment as to Plaintiff's Title VII gender discrimination claim is GRANTED;
   b. Defendants' Motion for Summary Judgment as to Plaintiff's TITLE VII retaliation claim is GRANTED;
2. The Court DECLINES to continue to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims, and these claims are DISMISSED WITHOUT PREJUDICE; and
3. The Clerk of Court shall enter judgment in favor of Defendants on Plaintiff's Title VII claims and shall terminate this case, and each party shall bear their own costs.

Dated this 29th day of December, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge